UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| **LINDA TRAIL** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:19-cv-191 |
| ) | |
| **INV. DAVID S. CRESSELL** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM IN OPPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Linda Trail, by counsel, hereby files her Memorandum in Opposition to Defendant David S. Cressell's ("Defendant Cressell") Motion for Summary Judgment (ECF No. 16) and, in furtherance of her position, respectfully states as follows:

**INTRODUCTION**

On August 16, 2017, Linda Carol Trail was wrongfully arrested for a crime that she did not commit. She was incarcerated for approximately eight days, transferred from North Carolina to Virginia as a fugitive and suffered extreme fright and humiliation. She was arrested without probable cause due to Defendant Cressell's plain incompetence or deliberate indifference to the truth. Neither of which deserve qualified immunity. When the warrant was issued for the arrest of Linda Carol Trial, Defendant Cressell had the real name, description and address of the real criminal, Lynn Trail. These facts were never investigated by Defendant Cressell. Defendant Cressell also had a photograph of Linda Carol Trail—a photograph that the informant could not connect to the real criminal Lynn Trail. Under the totality of the circumstances in this case,

given all of the discrepancies, a reasonable officer would not conclude that there was probable cause for an arrest.

**PLAINTIFF'S RESPONSES AND OBJECTIONS
TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS[1]**

1. (DSOUF ¶¶ 1,2) Disputed as immaterial.

2. (DSOUF ¶ 3) Undisputed.

3. (DSOUF ¶ 4) Disputed as incomplete. The informant later identified the female full name as Lynn Trail through text. Cressell Dep. at 19:11-17 Ex. B.

4. (DSOUF ¶ 5) Undisputed.

5. (DSOUF ¶¶ 6-11) Disputed as immaterial, and incomplete. Detective Grim never shared his report with Defendant Cressell and only spoke with him over the phone. Grim Dep at 7:15-8:10 Ex. C. In his report, Detective Grim misidentified Jason Ayers girlfriend as Linda Carol Trail. Grim Dep. at 9:1-7 Ex. C.

6. (DSOUF ¶¶ 12-18) Undisputed.

7. (DSOUF ¶19) Disputed as immaterial, and incomplete. Detective Grim never shared his report with Defendant Cressell and only spoke with him over the phone. Grim Dep at 7:15-8:10 Ex. C. In his report, Detective Grim misidentified Jason Ayers girlfriend as Linda Carol Trail. Grim Dep. at 9:1-7 Ex. C.

8. (DSOUF ¶20-21) Undisputed. In other words, the informant could not positively identify Lynn Trail through the picture of Linda Carol Trail. Cressell Dep. at 22:10-13 Ex. B.

9. (DSOUF ¶¶ 22-26) Undisputed. While it is undisputed that Defendant Cressell does not recall whether he provided the grand jury with the exculpatory information that he had in his

---

[1] Defendant did not set out his statement of facts ("DSOUF") in numbered paragraph format. Plaintiff has attached as "Ex. A" a verbatim restatement of DSOUF including citations in numbered format for ease of reference.

possession, it can be inferred and indeed the Plaintiff alleges that the grand jury would not have issued the indictment if they had been given the information.  First Am. Compl. at ¶ 17.

10. (DSOUF ¶¶ 27-28)  Undisputed.

11. (DSOUF ¶¶ 29-30)  Disputed as immaterial and prejudicial.  The fact that Plaintiff filed an assault charge against her husband has no bearing on the issues before the Court.

12. (DSOUF ¶¶ 31-35)  Undisputed.

<b><u>PLAINTIFF'S UNDISPUTED FACTS AND FACTS THAT PRESENT A GENUINE ISSUE</u></b>

13. At all times prior to seeking the indictment Defendant Cressell had the actual name of the criminal he was seeking.  Cressell Dep. at 19:11-17 Ex. B.

14. Despite having the actual name of the criminal he was seeking—"Lynn Trail"—Defendant Cressell never ran that name through any of the law enforcement databases that he had access to, or did any other investigation regarding that name.  Cressell Dep. at 19:18-25 Ex. B.

15. At all times prior to seeking the indictment Defendant Cressell had the actual address of the criminal he was seeking.  Cressell Dep. at 17:22-18:5 Ex. B.

16. Despite having the actual address of the criminal he was seeking Defendant Cressell never ran that address through any of the law enforcement databases that he had access to.  Cressell Dep. at 18:14-20 Ex. B.

17. At all times prior to seeking the indictment Defendant Cressell had the actual name of the boyfriend of the criminal he was seeking.  Cressell Dep. at 17:9-12 Ex. B.

18. Despite having the actual name of the boyfriend of the criminal he was seeking Defendant Cressell never ran that person's name through any of the law enforcement databases

that he had access to, or did any other investigation regarding the name Jason Ayers. Cressell Dep. at 18:14-20 Ex. B.

19. When the informant failed to positively identify the photo of Linda Carol Trail as Lynn Trail, it gave Defendant Cressell pause that they were the same person. Cressell Dep. at 22:10-16 Ex. B.

20. Agent Michael Carter, the other officer involved in the initial investigation, testified that hypothetically given a failure to identify a photograph by a confidential informant he would have left the case open, and that if he was presented with two similar names during an investigation he would gather information on both names. Carter Dep. 10:13-12:24 Ex. D.

21. In late 2015 or early 2016, approximately a year prior to Linda Carol Trail's arrest Defendant Cressell personally participated in the arrest of the true suspect—Lynn Trail— along with her boyfriend Jason Ayers, for the sale of prescription narcotics. Cressell Dep. at 24:20-27:6 Ex. B.

22. After the arrest of Lynn Trail Defendant Cressell took no steps to have the warrant for Linda Carol Trail withdrawn. Cressell Dep. at 27:7-11 Ex. B.

## ARGUMENT

A. *Defendant Cressell failed to establish probable cause prior to seeking the warrant for the Arrest of Linda Carol Trail.*

Defendant Cressell's failure to conduct any meaningful investigation, and consequent lack of probable cause to arrest Ms. Trail, becomes clear when one conducts a careful analysis of the controlling decisional law (even the caselaw upon which Defendant Cressell relies).

A careful analysis of the Fourth Circuit's opinion in Smith v. Munday illustrates the glaring absence of probable cause in this case. 848 F.3d 248 (4th Cir. 2017). In Smith, the plaintiff brought a Section 1983 suit after police misidentified (and arrested) her as the suspect in

4

a crack cocaine drug buy. Id. at 251. There, the defendant had conducted an investigation using a confidential informant to purchase crack cocaine from a suspected drug dealer. Id. After the transaction, the confidential informant told the police that he purchased drugs from April Smith, a black female. Id. The defendant officer then searched police databases for residents of the county who were named April Smith. Id. Upon finding one such resident (among others) who had prior convictions for selling cocaine, the defendant applied for and received an arrest warrant for the plaintiff, charging her with the alleged drug offenses. Id. at 251-52.

The district court found that no constitutional violation had occurred. Id. at 252. Specifically, the district court reasoned that the following facts supported a finding of probable cause: (1) the police were looking for a black woman; (2) that black woman's name was April Smith; (3) the plaintiff had previously sold drugs in the past; and (4) plaintiff lived a short distance from where the drug sale occurred. Id. The Fourth Circuit found those four distinct bases for probable cause wholly insufficient. Id. In reversing the district court, the Fourth Circuit took pains to emphasize the inadequacies of the defendant's investigation. Id. at 253-54. Indeed, the extent of the defendant's investigation was merely running a search on the department's database looking for a woman named April Smith. Id. The Court expressed frustration that the defendant took no action to investigate the plaintiff herself, and did not even verify that the plaintiff ever visited the site of the drug sale. Id. In short, there was no information "connecting [plaintiff] to the crime, other than a common name, gender, race, and generic description as 'skinny.'" Id. at 255. Finally, the Court admonished that although an officer is not required to exhaust every potentially exculpatory lead, the officer "must still conduct some sort of investigation and assemble individualized facts that link the suspect to the crime." Id. at 254.

Here, Defendant Cressell did not have the same insufficient quantum of information procured by the defendant in Smith. Defendant Cressell had no evidence that Linda Carol Trail herself had previously sold drugs. The only information he had on Linda Carol Trail was a nine year old DMV record. Still more, Defendant Cressell did not have Linda Carol Trail's address, and made no effort to verify who actually lived at the Case Knife Rd. residence where the drug buy allegedly took place. Cressell Dep. at 18:14-20 Ex. B (stating that the only investigation he performed with respect to the 1528 Knife Road address was "driving by" it). Finally, and more importantly, unlike the defendant in Smith, the name *Defendant Cressell was provided by the informant was different than the name of the person who was eventually arrested*.

Defendant Cressell's investigation here is comparable in its inadequacies to the defendant's investigation in Smith. Defendant Cressell relies on the single fact that a fellow officer—Daniel Grim—provided Ms. Trail's name in a phone call based on a September 2012 interaction that Detective Grim allegedly had with Ms. Trail.[2] Like the defendant in Smith—who did nothing more after retrieving April Smith's name from a police database—Defendant Cressell did nothing more to connect Ms. Trail to the alleged drug buy after he retrieved her name from Detective Grim. He did not investigate Ms. Trail personally. Indeed, he apparently did not even verify her address (if he did, he would have discovered that she lived in North Carolina). He did not conduct any investigation whatsoever into whom Jason Ayers was or where he lived (although the informant advised Defendant that the suspect was dating Jason Ayers). Cressell Dep. at 17:15-20 Ex. B. And he never bothered to verify that Linda Carol Trail had any connection to the site of the drug sale.

---

[2] Of course, given that Ms. Trail was not in Virginia at that time, Detective Grim actually had no such interaction with her.

Remarkably, Defendant Cressell *never even investigated "Lynn Trail"* (the name actually provided to him). Cressell Dep. at 19:18-25 Ex. B. The only investigation that Defendant Cressell undertook after receiving Linda Carol Trail's name from Detective Grim was providing her picture to his confidential informant, whereupon that informant failed to identify her as the correct suspect. Cressell Dep. at 22:10-13 Ex. B. When asked whether the informant's failure to identify Ms. Trail gave him pause—especially given that the informant was the only one who saw the suspect—Defendant Cressell shrugged it off: "It did, but the picture was nine years old, so I mean, it was what it was." Cressell Dep. at 22:15-16 Ex. B. Plaintiff—who was extradited from her home in North Carolina and falsely incarcerated for seven days—respectfully disagrees that "it was what it was."

Nonetheless, Defendant argues that he is entitled to qualified immunity on Plaintiff's claims because he had a probable cause to arrest her. Def.'s Mem. in Supp. at 6 (ECF 17). In support of that contention, Defendant claims he had "very similar first names, same last name, same boyfriend, information about a medical condition, and same location for what he thought was one woman." Id. at 10. The problem, however, is that Defendant in fact did not have nearly any of that information. For instance, Defendant did not have "the same boyfriend"—i.e., there is no evidence that Plaintiff also dated a man named Jason Ayers (Plaintiff's husband's name is Mark, and they have been married for over 24 years). Surely, Defendant could not have known if he indeed had information about "the same boyfriend" given that Defendant never investigated who Jason Ayers was, where he lived, and whether he was dating someone named Lynn Trail. Cressell Dep. at 17:15-20 Ex. B. Moreover, "information about a medical condition" does not support probable cause when that information does not relate in any way to Plaintiff. The existence of medical information about someone, somewhere, does not bolster the credibility of a

7

suspect's identification when that medical information has nothing to do with that suspect. Furthermore, Defendant did not have the "same location" either. In fact, Ms. Trail had left Virginia in 2006—*seven years before Defendant launched the investigation at issue.* Trail Dep. at 6:14-16 Ex. E. Finally, Defendant did not even have the same name. The provision of a name ("Lynn Trail") by an informant does not provide a police officer with open license to arrest every person with a similar name. Smith, 848 F.3d at 254 ("If this amount of evidence were sufficient for probable cause, then officers would have probable cause to obtain arrest warrants for any local residents who fit the generic description of the day—be it "black woman," "black man," or otherwise—so long as they had a criminal history and an unfortunately common name."). At bottom, then, Defendant Cressell contends that because another officer provided him Plaintiff's name in a phone call, he had probable cause to arrest her without any further investigation (and despite the fact that the only further investigation he conducted—providing Plaintiff's photograph to his informant—actually undermined Detective Grim's identification of her). That argument runs squarely counter to the Fourth Circuit's holding in Smith, and should accordingly be rejected by this court.

      Finally, in support of his position that probable cause existed to arrest Plaintiff, Defendant cites three cases that are factually inapposite to the case at bar. Def.'s Mem. in Supp. at 6-10 (ECF 17). In all of those cases, the defendant-officers, after having received an initial suspect identification, conducted follow-up investigations that produced evidence corroborating the initial identification. Brown v. Wiita, 7 F. App'x 275, 277, n. 1 (4th Cir. 2001) ("by the time he directed that the arrest be carried out, [defendant] had also determined from a computer search that there was only one 'Robert Brown' – i.e., appellee Robert David Brown – who lived in the Smith Mountain Lake Area and matched the suspect's description."); Thompson v. Prince

8

William Cnty., 753 F.2d 363, 364-65 (4th Cir. 1985) (finding probable cause after the defendant-officer use multiple investigative techniques—including his own personal observations of the suspect, verifying the plaintiff's identity by running the license plate of her car, and securing a tip from a police informant verifying the plaintiff's name—before arresting the plaintiff); Lucas v. Shively, 31 F. Supp. 3d 800, 805-07, 812 (W.D. Va. 2014) (granting qualified immunity for officers where the defendant canvassed the businesses in the area of the burglary and found a citizen tipster who provided him with the plaintiff's father's name, verified that the plaintiff approximated the physical description of the suspect provided by eyewitnesses, and, critically, secured a positive matching of plaintiff's fingerprints to those found at the crime scene). First, Defendant Cressell cannot rely on Thompson here because he actually showed his informant a photo of Plaintiff, and the informant could not identify Plaintiff as the individual who sold him drugs. In Smith, the Fourth Circuit clarified that the key fact in Thompson was that the police officer had used multiple methods to identify the suspect, and that he *himself* mistakenly identified the plaintiff as the woman he purchased drugs from. Smith, 848 F.3d at 254 ("The equivalent mistake here would be if [the defendant] showed [the informant] a photo of [plaintiff], and [the informant] mistakenly believed that [plaintiff] was the woman he purchased crack cocaine from.").

Moreover, the Wiita court expressly noted that it was distinguishing Wiita from a prior case where the Court found no probable cause because in Wiita the officers did not have easy access to evidence that would have established the plaintiff's innocence. Wiita, 7 F. App'x at 280, n. 4 (citing Clipper v. Takoma Park, 876 F.2d 17 (4th Cir. 1989)). In Clipper—the case distinguished in Wiita—the Fourth Circuit upheld a jury verdict in favor of the plaintiff where the police failed to consider exculpatory evidence, even though the eyewitness who identified the

plaintiff was "not sure" about that identification. Clipper, 876 F.2d 17 at 19-20. Clipper dealt with a three-man armed bank robbery where a shootout led to the escape of the third suspect. Id. at 18. Officers then arrived on scene and interviewed multiple bank employees, including the bank manager who gave a detailed description of the escaped suspect. Id. Additionally, the bank manager provided the FBI with the bank's surveillance film of the incident. Id. Eventually, police determined that a vehicle involved in the heist belonged to plaintiff, and FBI agents interviewed plaintiff in connection with the investigation. Id. Though plaintiff protested his innocence, the defendant-officer eventually arrested him after the bank manager and another employee identified plaintiff as the escaped robber. Id. at 19. The officer who was involved in the shooting was the only officer to provide an eyewitness account of the incident, and, critically, he was unable to positively identify plaintiff as the suspect. Id. at 18. Subsequently, the bank manager stated that plaintiff was not the robber, and all charges against him were dismissed. Id. at 19.

In upholding the plaintiff's jury verdict, the Court stressed the importance of the defendant's failure to pursue readily available exculpatory evidence. Id. Specifically, the Court observed that the officer's eyewitness testimony could not positively identify plaintiff as the suspect. Id. Yet despite the lack of a positive identification, the defendants did not view the bank surveillance photographs, nor did they confirm the legitimacy of plaintiff's alibi. Id. The Court held that although the failure to investigate exculpatory evidence by itself does not ordinarily negate probable cause, "the evidence of that omission, . . . the evidence of [eyewitness's] statement to [defendant that he could not positively identify the plaintiff], and the speculative nature of the other information and investigative instincts upon which [defendant] relied in making the arrest form a sufficient evidentiary base to sustain" the jury verdict. Id. at

20. In other words, even though plaintiff's vehicle was used as part of the robbery and despite the fact that two bank employees had identified him as the robber, the Court still found ample evidence to support the jury verdict because the defendant-officer did not investigate further after an eyewitness failed to positively identify the plaintiff.

The critical facts in Clipper closely parallel the facts here. Like the eyewitness in Clipper, Defendant Cressell's informant failed to positively identify Plaintiff when the informant was shown her photograph. And like the defendants in Clipper, Defendant Cressell then utterly failed to carry out any further investigation to determine the true identity of the suspect. Instead, Defendant Cressell proceeded to initiate legal process against Ms. Trail, despite having no eyewitness who could place her at the site of the drug sale, despite having not even verified who actually lived at 1528 Knife Road in the first instance, and despite otherwise having no evidence connecting Plaintiff to the criminal activity at issue.

Probable cause may not be the most exacting standard, but it does require that officers "conduct some sort of investigation and assemble individualized facts that link the suspect to the crime." Smith, 848 F.3d at 254. Linda Carol Trail was wrongly jailed on the basis of a clearly erroneous identification that would have been easily discovered if Defendant Cressell had conducted *any* meaningful investigation at all. The Fourth Amendment does not countenance arbitrary arrests of citizens like the one that took place in this case. Detective Grim's provision of Ms. Trail's name in a phone call cannot—standing alone—constitute probable cause. Accordingly, Plaintiff respectfully requests that this Court deny Defendant's Motion.

## CONCLUSION

Accordingly, for the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment, and allow this case to be adjudicated on its merits.

DATE: May 13, 2020                                    Respectfully Submitted,
                                                      LINDA TRAIL

                                                      _____/s/_____
                                                      Jonathan E. Halperin (VSB No. 32698)
                                                      Andrew Lucchetti (VSB No. 86631)
                                                      Halperin Law Center, LLC
                                                      5225 Hickory Park Drive, Suite B
                                                      Glen Allen, VA 23059
                                                      Phone: (804) 527-0100
                                                      Facsimile: (804) 597-0209
                                                      jonathan@hlc.law
                                                      andrew@hlc.law
                                                      *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 13th day of May, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Jim H. Guynn, Jr. (VSB No. 22299)
    Guynn, Waddell, Carroll & Lockaby, P.C.
    415 S. College Avenue
    Salem, Virginia 24153
    Phone: (540) 387-2320
    Facsimile: (540) 389-2350
    jimg@guynnwaddell.com
    *Counsel for Defendant*

                                                                 **/s/**
                                      Jonathan E. Halperin (VSB No. 32698)
                                      Andrew Lucchetti (VSB No. 86631)
                                      Halperin Law Center, LLC
                                      5225 Hickory Park Drive, Suite B
                                      Glen Allen, VA 23059
                                      Phone: (804) 527-0100
                                      Facsimile: (804) 597-0209
                                      jonathan@hlc.law
                                      andrew@hlc.law
                                      *Counsel for Plaintiff*