CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 13 2020

JULIA C. DUDLEY, CLERK
BY:  s/ H. MCDONALD
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LINDA TRAIL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19cv00191 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DAVID S. CRESSELL, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Linda Trail filed this civil rights action against Defendant Investigator David Cressell, a Pulaski County Sheriff's deputy. Trail alleges Cressell violated her constitutional rights by arresting her without probable cause. Specifically, she asserts a claim for malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amendment, as well as a related state-law claim.

The parties do not dispute the relevant facts underlying this suit. In the fall of 2013, Inv. Cressell, then a member of a regional drug task force, utilized a confidential informant ("CI") to purchase a small amount of Diazepam, a Schedule IV controlled substance, from a female resident of Pulaski County. Based on information provided by a colleague, Cressell concluded that the person who sold the Diazepam was Linda Trail. The person who actually sold the Diazepam to Cressell's CI was not Trail; at the time of the sale, she was living in North Carolina.

Ten months later, Inv. Cressell presented his case to a local grand jury, naming Linda Trail as the individual who had unlawfully distributed drugs to his CI. The grand jury returned an indictment against Trail, and an arrest warrant was later entered into a national database. A

little over three years later, police officers in Burlington, North Carolina, arrested Trail on the Virginia warrant. Trail was incarcerated at a local jail in North Carolina for approximately one week before deputies from Pulaski County transported her back to Virginia. Fortunately, about 24 hours after arriving in Virginia, a conscientious sheriff's deputy determined that Linda Trail was not the person who had committed the offense described in the indictment and secured her release.

Inv. Cressell moves for summary judgment under the doctrine of qualified immunity, arguing that he should be shielded from civil liability because he had probable cause to secure an indictment against Linda Trail and therefore did not violate her constitutional rights. The court disagrees and will deny his motion for summary judgment. When presented with conflicting information about the identity of his target, Cressell failed to undertake basic investigative steps to corroborate that Linda Trail had, in fact, committed the offense at issue, and failed to investigate the person actually named by the CI. Accordingly, the court cannot hold, as a matter of law, that the indictment Cressell secured was supported by probable cause or that his conduct was objectively reasonable under the circumstances.

## I.

In September 2013, a CI contacted Inv. Cressell and Virginia State Police Special Agent Michael Carter, Cressell's colleague on the regional drug task force, stating that the CI could purchase Diazepam, which the CI referred to as "Nerve Pills," from a female who lived on Case Knife Road in Pulaski, Virginia. (Dep. of David Cressell 15:25–17:24, Mar. 12, 2020 [ECF No. 28]; Pulaski County Sheriff's Office Narrative, 2013-21822, Def.'s Ex. 2 [ECF No. 17-2].)

At the time of this initial contact, the CI told Cressell the female subject's name was Lynn, and that she lived with a male named Jason Ayers.

Following this conversation, Inv. Cressell and Special Agent Carter drove to the area described by the CI and determined that the residence was likely 1528 Case Knife Road. Cressell and his partner then met with the CI at a staging location to discuss logistics for conducting a controlled buy from the female target, Lynn.[1] At this meeting, the CI clarified that Lynn was a white female who had recently served 44 months in jail. The CI added that Lynn had cancer and had recently had surgery.

After this meeting, the CI, wearing a hidden audio recorder, returned to 1528 Case Knife Road for the controlled buy. According to the officers' reports, the CI entered the residence and purchased 20 Diazepam tablets from Lynn for $20. During her post-transaction debrief with Cressell, the CI stated that Lynn had handled the exchange and that Jason Ayers had been present inside the residence during the deal. Later that evening, the CI texted Cressell stating that Lynn's last name was "Trail."

Because Inv. Cressell was not familiar with Lynn Trail, he contacted Detective Daniel Grim, a colleague from the Pulaski police department, to see if he could help identify the female target. The following day, Det. Grim responded to Cressell that his female target's name was Linda Carol Trail. Grim added that Linda Trail lived with Jason Ayers and was recovering from cancer treatment.

---

[1] A controlled buy refers to a common investigative technique utilized by law enforcement in drug investigations. During a typical controlled buy, an officer provides the CI with funds to purchase drugs from the target and carefully monitors the ensuing transaction from a nearby location. To corroborate the CI's credibility, the officers usually follow a strict protocol that involves recording the serial numbers from the currency given to the CI, searching the CI before and after the transaction, and recording the transaction with hidden audio and/or video equipment.

As it turned out, Det. Grim provided an incorrect name, but neither officer knew that at the time. Grim based his assertion about the identity of the female target on an investigation he had conducted a year prior at 1528 Case Knife Road related to the malicious wounding of Jason Ayers.[2] According to the police report about that incident, "Linda Carol Trail" was a witness to that crime. Although the report listed Linda Carol Trail's address as 1528 Case Knife Road in the narrative section, her address was listed as 1982 Snider Lane, Pulaski, Virginia, in the "involved parties" section of the report. (*See* ECF Nos. 17-1,17-2.) Inv. Cressell never requested—and Grim never provided Cressell with—that incident report. As Grim later testified, the identification was incorrect, and Ayers's female companion in 2012 and 2013 was likely Lynn Trail, a different person entirely. (Dep. of Daniel Grim 9:6–7, Mar. 12, 2020 [ECF No. 27].)

After receiving the name "Linda Carol Trail" from Grim, Inv. Cressell accessed the Virginia DMV database and retrieved a nine-year-old photograph of Linda Trail. He then showed this photograph to his CI, but the CI was unable to identify Trail as the person who sold her the pills. (Cressell Dep. 22:10–13.)

Inv. Cressell later testified that the CI's inability to identify the photograph of Linda Trail gave him pause (*Id.* at 22:14–16), and he even noted in his report that he would attempt to obtain "a more current picture to show this CI," (ECF No. 17-2). Cressell did not, however, take any additional steps to investigate the discrepancy between the name given by the CI

---

[2] It should be noted that, at the time Grim gave Cressell the information from the prior case file, Grim had no personal knowledge of the transactions between the CI and the female subject; his only source of knowledge about the investigation was the phone conversation with Cressell. (Dep. of Daniel Grim 7:15–8:10, Mar. 12, 2020 [ECF No. 27].)

(Lynn) and the one provided by Grim (Linda). Specifically, Cressell did not obtain or show the CI a more recent DMV photograph of Linda Trail, and he testified that he was "not aware of" taking the additional investigative steps of running the names Lynn Trail or Jason Ayers through any law-enforcement databases. (Cressell Dep. 17:15–18.) Cressell also did not recall if he ran Linda Trail's name through any other databases, such as the National Crime Information Center (NCIC) or an analogous Virginia-based platform, to see if she had a prior criminal record or to gather pertinent background information, including whether she was a current resident of the Town of Pulaski, Pulaski County, or even Virginia.

Ten months later, in April 2014, Inv. Cressell proceeded to a state grand jury and obtained an indictment against Linda Trail for felony drug distribution. At his deposition in this case, Cressell testified he did not recall whether he informed the grand jury that his CI had provided a different first name than the one listed in the indictment, or that the CI had not been able to identify the DMV photograph of Linda Trail as the female who sold her the Diazepam. (*Id.* at 24:1–10.)

After the grand jury returned the indictment, Inv. Cressell did not attempt to locate or arrest Trail. He explained that, as a general matter, the regional task force did not serve indictments; instead, they relied on patrol deputies to make arrests.

In August 2017, Burlington police officers encountered Linda Trail at her North Carolina residence when they came to serve her with a subpoena to testify in an unrelated matter. When the officers met with Trail to serve the subpoena, they apparently ran her name through a database and discovered the active warrant from Virginia. The officers arrested

Linda Trail and transported her to a local jail. At the time of her arrest, Trail had been residing in North Carolina for approximately 11 years.

A week later, deputies from Pulaski picked up Linda Trail from the North Carolina jail and transported her to a jail in Pulaski County. Shortly after her arrival and detention in Virginia, one of the deputies who had transported Trail obtained a photograph of the female associated with the 2014 warrant and quickly determined that the offender was not Linda Trail. The deputy immediately reported her discovery, and the Commonwealth's Attorney agreed to release Trail on an unsecured bond. Less than a month later, the prosecutor dismissed the charge.

Linda Trail brought suit in this court on February 22, 2019, alleging a violation of 42 U.S.C. § 1983 (Count I) and a state law malicious prosecution claim (Count II). (ECF No. 1.) On April 29, 2020, Cressell filed the present motion for summary judgment. (ECF No. 16.) All parties have thoroughly briefed the issues, including additional briefing requested by the court, and the court held oral argument on the motion on October 7, 2020.

## II.

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir.

1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

III.

Inv. Cressell argues he is entitled to summary judgment because the doctrine of qualified immunity shields him from suit. It is well-established that qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 5–6 (2013) (cleaned up); *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014); *Lucas v. Shively*, 31 F. Supp. 3d 800, 810 (W.D. Va. 2014). Evaluating a claim of qualified immunity involves a two-part test: (1) do the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) did the actions violate a clearly established right of which a reasonable person would have known? *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017); *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). In reviewing a claim of qualified immunity, the district court need not consider the questions in a specific sequence. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the defendant prevails on either question, the inquiry ends and he is entitled to judgment as a matter of law. *See Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002). As the party asserting qualified immunity, Cressell has the burden of proving the defense. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003)).

IV.

The court first considers whether the facts establish a constitutional violation. Linda Trail's § 1983 "Unreasonable Seizure/Malicious Prosecution" claim against Inv. Cressell is one "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." *Munday*, 848 F.3d at 253 (quoting *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000)). This claim requires that (1) the defendant has seized the plaintiff by legal process unsupported by probable cause, and (2) the criminal proceedings were terminated in the plaintiff's favor. *Id.* Because it is undisputed that the second element is satisfied, the determinative issue is whether Cressell had probable cause to arrest Trail on the drug charge. If he did, Cressell did not violate any of Trail's constitutional rights, "and the analysis ends right then and there." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

Probable cause is a "flexible, common-sense standard" that is determined by a totality-of-the-circumstances approach. *Florida v. Harris*, 568 U.S. 237, 240 (2013) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). A reviewing court "should only consider the information the officers had at the time they sought the warrant." *Munday*, 848 F.3d at 253. The court analyzes the facts known to the arresting officers "to determine whether they provide a probability on which reasonable and prudent persons would act," disregarding the subjective beliefs of the officers as to whether they believed the facts established probable cause. *Id.* Importantly, "[n]ot every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with

attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under 42 U.S.C. § 1983." *Thompson v. Prince William Cnty.*, 753 F.2d 363, 364 (4th Cir. 1985). Ultimately, the court must differentiate, as a matter of law, between reasonable human errors and misjudgments caused by a lack of diligence or professional care.

Reviewing the evidence in the record in the light most favorable to Linda Trail, the court cannot conclude that Inv. Cressell had information from which a reasonable and prudent police officer could conclude there was probable cause to support her arrest. The court understands the course of events that led Cressell to suspect, as an initial matter, that Linda Trail sold Diazepam to his CI. His CI informed him that the female who had sold the nerve pills had the same last name and a similar first name. Det. Grim later told Cressell, based on his previous experience with the occupants of 1528 Case Knife Road, that Jason Ayers's girlfriend, who lived at the residence, was named Linda Trail. Cressell was thus warranted in initially relying on this information to further his investigation. But he seriously erred in ending his preindictment inquiry there.

Inv. Cressell testified that, when his CI was unable to identify Linda Trail from the DMV photograph as the person who had sold the nerve pills, this gave him pause that he had identified the correct person. (Cressell Dep. 22:14–16.) He also documented his concern contemporaneously in a 2013 report of investigation, stating that he would "work on getting a more current picture to show this CI." (ECF No. 17-2.) Despite these valid concerns, Cressell did not take any additional investigative steps to solidify the identification before proceeding to the grand jury. Specifically, he does not recall searching for Linda Trail's name

in the NCIC or a Virginia criminal database to obtain a last-known address or prior criminal record. He has no recollection of running the name the CI initially gave him—Lynn Trail—through these databases either. There is also no indication that Cressell utilized standard law-enforcement databases to identify Lynn's (or Linda's) boyfriend, Jason Ayers, and investigate any possible connections between Ayers and the female purportedly associated with him. Cressell did not conduct any physical surveillance outside of 1528 Case Knife Road following his CI's controlled buy—perhaps the simplest method of identifying the female target for himself, based on the DMV photo or through cooperation with the CI. Finally, despite indicating the need to have the CI make a positive identification of Trail in his report, Cressell never obtained and presented a more recent photograph of Linda Trail to his CI. These simple investigative tools were each available to Cressell, but he did not take advantage of any of them.

While it is true that "an investigating officer need not exhaust every potential avenue of investigation, [he] must still conduct some sort of investigation and assemble individualized facts that link the suspect to the crime." *Munday*, 848 F.3d at 254 (cleaned up). Based on the discrepancies known to him at the time—the different first names and the CI's failure to identify Linda Trail from the photograph—an investigative officer, exercising reasonable diligence, would have done more to solidify the preliminary conclusion that Linda Trail was, in fact, the correct target.

Inv. Cressell argues he had sufficient probable cause based on the information Det. Grim communicated to him, and that he was not required to take any additional investigative steps. In support of this contention, he relies on the fact that he had "very similar first names,

same last name, same boyfriend, information about a medical condition, and same location for what he thought was one woman." (Def.'s Br. in Supp. pg. 10 [ECF No. 17].) But this argument, though appealing on its face, misses the mark. While it is true that both the CI and Grim reported that the female occupant of 1528 Case Knife Road—who the CI knew as Lynn Trail and whom Grim referred to as Linda Trail—was suffering from cancer, neither statement definitively established the identity of that person as Linda Trail rather than Lynn Trail. Stated differently, the CI's assertion that the female drug dealer was suffering from cancer did not corroborate Grim's contention that the female's name was Linda; it merely established that Grim and the CI were referring to the same person. The same is true with respect to the identifications of Jason Ayers as the boyfriend and co-occupant of the residence. The fact that both the CI and Grim identified him as being present did not corroborate either the CI's assertion that the female's name was Lynn or Grim's contention that it was Linda.

In reaching the conclusion that, as a matter of law, Cressell did not have probable cause for Trial's arrest, the court is guided by the Fourth Circuit's recent decision in *Smith v. Munday*, as well as its analysis of investigative conduct in similar misidentification cases.

In *Munday*, the investigative officer utilized a CI to conduct a single controlled buy of narcotics from a female drug source. *Munday*, 848 F.3d at 251. After the buy was completed, the CI informed the officer that the dealer was a black female named April Smith. The officer then consulted police databases for local residents with that name, and eventually "stumbled upon" a black female named April Smith who had prior convictions for drug distribution. *Id.* The officer's search also revealed two other females with the same name and criminal records, but the officer dismissed them from consideration "for no immediately apparent reason." *Id.*

at 253. Nine months later—and without conducting any additional investigation—the officer

obtained a warrant for the first April Smith's arrest. It was later determined that the officer

arrested the wrong person, and the prosecutor dismissed the case. *Id.*

On these facts, the Fourth Circuit concluded that the officer "simply did not have

enough information for a reasonable or prudent person to believe there was probable cause."

*Id.* at 253. The court added that the officer "lacked any information connecting Smith's

conduct to the contours of the offense, and certainly lacked enough evidence to create any

inference more than mere suspicion." *Id.* Specifically, the court noted:

> There is no evidence that Munday attempted to identify Smith as
> the black woman in the video footage. There is no evidence the
> officers showed Lynch a photo of Smith to establish the
> identification. There is no evidence that the officers investigated
> Smith herself, or found any indication that Smith frequented the
> site of the drug sale that day, that month, or at all. Indeed, there
> is no explanation whatsoever for the nine-month delay between
> [the CI] saying a black woman named April Smith sold crack
> cocaine to him and the issuance of the arrest warrant for April [ ]
> Smith.

*Id.* at 253–54. Despite the factual difference that Cressell had two similar but different names

for his target, the Fourth Circuit's concerns about the inadequacy of the preindictment

investigation in *Munday* are directly on point here.

Like the officers in *Munday*, Inv. Cressell did not conduct any further investigation to

connect Linda Trail to 1528 Case Knife Road on the date his CI purchased drugs there.

Although Cressell showed his CI a photograph of Linda Trail, unlike the officers in *Munday*,

the CI could not identify her as the female who had sold her drugs. Despite his documented

concerns about this failure and noting the need to show the CI a more recent photograph in

his report, Cressell never took this additional step, and his failure to follow-up effectively

places him in the same posture as the officer in *Munday*. Similar, too, is the ten-month delay between the controlled buy and Cressell's presentment to the grand jury. During this lengthy period, he failed to conduct any additional investigation to shore up his suspicion that Linda Trail was the proper target.

The other cases cited by Inv. Cressell are distinguishable on the facts and do not support his contention that the warrant was supported by probable cause.

In *Thompson v. Prince William County*, the Fourth Circuit held that probable cause supported the plaintiff's arrest, even though she was not the person who had committed the crime. 753 F.2d 363 (4th Cir. 1985). The court based this conclusion on the finding that the police officer had used several investigative methods to establish the plaintiff's identity, and the officer himself had mistakenly identified her as the woman from whom he had purchased drugs. *Id.* at 364. Inv. Cressell, on the other hand, never attempted to identify the drug target himself, and he failed to follow up with his CI to secure a positive identification of Trail from a more-recent DMV photograph before seeking her arrest.

The facts of *Durham v. Horner* are neither analogous to those of this case nor helpful to Cressell. In that case, the Fourth Circuit excused the arresting officer's erroneous arrest of the plaintiff, holding there was probable cause to support the charge. *Durham v. Horner*, 690 F.3d 183, 190. Central to that decision were the court's findings that: (1) the CI had conducted three controlled buys from an individual identified three times as having the same name as the plaintiff; (2) the officer had utilized two separate law-enforcement databases to identify that target; and (3) based on those database searches, the officer concluded—albeit wrongly—that the plaintiff was the target given his previous ties to the geographic area and his prior record

of drug convictions. *See id.* As discussed in detail above, Cressell did not conduct any database research recently tying Linda Trail to the area, let alone to any prior drug deal.

Inv. Cressell's argument is not buttressed by this court's decision finding probable cause in *Lucas v. Shively*, 31 F. Supp. 3d 800 (W.D. Va. 2014). In that case, the court based its decision in favor of the officer on the critical finding that a fingerprint examiner told the officer (mistakenly) that he had matched the plaintiff's known fingerprints to a set of latent fingerprints recovered from the scene of a burglary. *Id.* at 812. The court concluded: "Most critically, Shively had information forensically linking Lucas to both crime scenes." *Id.* Cressell, on the other hand, did not rely on a forensic "match" opinion in making his identification of Linda Trail; in fact, he had no "match" to her at all.

The court recognizes that a state grand jury determined there was probable cause to return a felony drug indictment against Linda Trail. Ordinarily, "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause," and courts must give great deference to those determinations. *Horner*, 690 F.3d at 189 (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)); *Costello v. United States*, 350 U.S. 359, 363 (1956)); *see also United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 417 (1969)). This deference, however, "is not boundless," and magistrates and grand juries cannot act as rubber stamps for the police. *Leon*, 468 U.S. at 914.

To be sure, the grand jury's return of an indictment is vital indicia of the existence of probable cause. But the deference generally afforded that determination is lost if an officer, deliberately or with reckless disregard for the truth, omits material information from his testimony before the grand jury. *See Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir.

2007) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). Here, there is no allegation that Cressell lied to the grand jury, nor any basis for the court to infer that he did; to the contrary (and to his credit), his testimony at his deposition on this point was honest.

But "[w]ith respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'" *Miller*, 475 F.3d at 627 (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 33, 743 (7th Cir. 2003)); *see also Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000); *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993). It is not enough to establish a constitutional violation to show that Inv. Cressell was negligent in his duties or that he made an innocent mistake. *See Franks*, 438 U.S. at 171. Likewise, it is not enough to establish that Cressell omitted *some* information in his testimony to the grand jury. *See id.* at 155–56, 171. Rather, Cressell must have omitted "material" facts from the grand jury. "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' [testimony] would establish probable cause.'" *Miller*, 475 F.3d at 628 (quoting *Wilson*, 212 F.3d at 789). Additionally, the Fourth Circuit has held that "[a]n officer cannot invoke qualified immunity where he did not avail himself of readily available information that would have clarified matters to the point that [the criminal charges] would have been flatly ruled out as factually unsupportable." *Goodwin v. Metts*, 885 F.2d 157, 164 (4th Cir. 1989) (internal quotations omitted), *overruled in part by Albright v. Oliver*, 510 U.S. 266 (1994).

In the present case, Inv. Cressell was faced with a CI who identified "Lynn Trail" as the woman who sold her Diazepam in the house on Case Knife Road. Cressell then spoke with Det. Grim, who gave him an alternate name based on an incident that occurred at the same address a year prior, but no additional information or a copy of his report. Cressell was also faced with a CI who was unable to identify Grim's alternative suspect by her DMV photo. In sum, not a single person involved in the controlled buy at the house on Case Knife Road ever identified "Linda Trial" as being involved in a crime, but Cressell nevertheless proceeded to seek an indictment charging her with distribution of a controlled substance. In light of the dearth of evidence connecting "Linda Trail" to *the crime under investigation* as opposed to the *house where the crime occurred*, the court concludes that the facts omitted from Cressell's grand jury testimony[3] were material and that probable cause did not exist to charge Trail with a crime. Moreover, a reasonably well-trained officer in Cressell's shoes would have known that probable cause was lacking. Because Cressell should have known—and, as discussed below, likely did know—that the omitted facts would destroy probable cause if disclosed to the grand jury, his omission of those facts from his testimony was reckless.

This conclusion is supported by Cressell's own notes, which indicate that, at the time of his investigation, he "must have entertained serious doubts as to . . . the accuracy of the information he reported." *Wilson*, 212 F.3d at 788. After his CI failed to positively identify a photograph of Trail—a development which gave him pause—Cressell noted that he needed

---

[3] The court acknowledges that transcripts of Cressell's grand jury testimony do not exist. As noted previously, Cressell has no independent recollection of whether he informed the grand jury of this vital information. Because the court is bound to view the facts in the lights most favorable to Trail, *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014), the court presumes, for the purposes of this motion, that Cressell did *not* inform the grand jury of these material facts.

to get a more recent photograph and follow-up with his CI. Unfortunately for him (and for Linda Trail), he failed to do that. Notes by Cressell himself, made contemporaneously with his investigation and indicating that further investigation was required, is compelling evidence that probable cause was lacking, and that he knew he needed more to justify securing an indictment.

"Objective reasonableness" is the "standard . . . [that] defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest." *Malley v. Briggs*, 475 U.S. 335, 344 (1986). On these facts, the court concludes that Cressell's actions were not objectively reasonable and that he recklessly omitted material facts in his testimony to the grand jury. *Cf. Miller*, 475 F.3d at 632 ("[A] police officer who recklessly . . . omits material information from[ ] a search warrant affidavit cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.").

The court is keenly aware of the admonition that "judges cannot pursue all the steps a police officer *might* have taken that *might* have shaken his belief in the existence of probable cause." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). Moreover, the court recognizes that, even though an officer's actions may have been mistaken, that does not mean they were unreasonable. *See Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000). The facts of this case, in the light most favorable to Trail, go beyond that, however, and into the realm of a clear violation of the Fourth Amendment. Accordingly, the grand jury's indictment does not establish the existence of probable cause.

V.

Having determined that the indictment Inv. Cressell secured was not supported by probably cause—and, relatedly, that a constitutional violation occurred—the final question for the court is whether Cressell is nevertheless entitled to qualified immunity. "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Clem v. Corbeau*, 284 F.3d 543 (4th Cir. 2002). The determinative question is "whether a reasonable person in the officer's position would have known that his or her actions violated that right." *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996). In a malicious prosecution case like this one, "'[t]he right at issue . . . is not the general right to be free from arrest without probable cause, but rather the right to be free from arrest under the particular circumstances of th[is] case.'" *Munday*, 848 F.3d at 260 (Agee, J., concurring in part and dissenting in part) (quoting *Graham v. Gagnon*, 831 F.3d 176, 182 (4th Cir. 2016)).

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate [or grand jury] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or . . . in objective good faith." *Munday*, 848 F.3d at 255–56 (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (internal quotation marks omitted)). But as the Fourth Circuit recently noted in *Munday,* and as the Supreme Court has long recognized, there is an exception to this general rule. Qualified immunity is not applicable "where the warrant application is so lacking in indicia of probable

cause as to render official belief in its existence unreasonable . . . ." *Malley*, 475 U.S. at 344–45; *see also Munday*, 848 F.3d at 256.

Under a totality-of-the-circumstances analysis and in light of Inv. Cressell's failure to perform basic investigative tasks to determine the identity of his target, the court cannot conclude, as a matter of law, that probable cause existed justifying a grant of qualified immunity and, effectively, final judgment in favor of the defendant. In addition, the court presumes, as it should under the Rule 56 standard, that Inv. Cressell failed to inform the grand jury of key facts that would have negated its finding of probable cause and, accordingly, that the independent probable-cause determination in this case does not trigger the usual protection of qualified immunity. Finally, the law on these issues—whether an individual with a name similar to the name of a suspected drug dealer and who has not been identified by anyone with knowledge of the drug sale—was undoubtedly clear at the time of the events in question. *See, e.g.*, *Munday*, 848 F.3d at 255–57. Cressell, in other words, had "fair warning" that the Constitution "did not permit him to seek a warrant that would otherwise be without probable cause." *Miller*, 475 F.3d at 632. His claim of qualified immunity will be denied.

## VI.

In conclusion, the court will deny summary judgment based on qualified immunity. In reaching this decision, the court is mindful that law enforcement—particularly at the state and local level—is inherently dangerous, stressful, and unpredictable, and that the doctrine of qualified immunity is a critical safeguard for these brave and dedicated public servants. Recognizing this, courts should refrain from *de novo* nitpicking or holding officers to unreasonable standards that are incongruent to the harsh realities of day-to-day police work.

The court does not believe it has done so in this case. The record here raises genuine issues of material fact related to the reasonableness of the officer's investigation and, relatedly, vital constitutional considerations. In order to protect those interests, this case should proceed.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 13th day of October, 2020.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE